**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**GREGORY TAYLOR, individually and on behalf of the GREGORY WAYNE TAYLOR INDIVIDUAL RETIREMENT ACCOUNT,**

      **Plaintiff,**

**-vs-**         Case No. 6:10-cv-559-Orl-31GJK

**AMERICAN HERITAGE CHURCH FINANCE, INC., MARK WARREN ASPLIN, AMY HORNE THOMPSON, and BRYANT FORREST THOMPSON,**

      **Defendants.**

## ORDER

This matter came before the Court without oral argument upon consideration of the Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1) (the "Motion") (Doc. 11) filed by Defendants Amy Horne Thompson and Bryant Forrest Thompson ("Defendants"),[1] and the response in opposition thereto (the "Response") (Doc. 20) filed by Plaintiff Gregory Taylor ("Plaintiff").

**I. Overview**

On April 14, 2010, Plaintiff brought suit to confirm an arbitration award pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. (Doc. 1). In his Amended Petition, Plaintiff predicates subject matter jurisdiction upon 28 U.S.C. § 1332 (i.e., diversity of citizenship).

---

[1] Defendants American Heritage Church Finance, Inc. and Mark Warren Asplin did not join in Amy and Bryant Thompson's Motion.

In their Motion, Defendants contend that the Court lacks subject matter jurisdiction because Plaintiff and Defendants are all citizens of the State of Florida.[2] In his Response, Plaintiff contends that at all material times he was a citizen of the State of Kentucky and that there is complete diversity of citizenship between the parties.

The Court addresses Defendants' Motion, *infra*.

## II. Standard of Review

Unlike state courts, lower federal courts are courts of limited jurisdiction: they possess only that power authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). There is a presumption that a cause lies outside this limited jurisdiction, and the burden of proving otherwise rests on the party asserting jurisdiction. *Turner v. Bank of North Am.*, 4 U.S. (4 Dall.) 8, 11 (1799); *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-183 (1936); *see also Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001).

For diversity jurisdiction to exist, no defendant may be a citizen of the same state as any plaintiff. *See* U.S. CONST. art. III, § 2; 28 U.S.C. § 1332; *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806), *overruled on other grounds*, *Louisville, Cincinnati & Charleston R.R. Co. v. Letson*, 43 U.S. 497, 555 (1844). Citizenship is assessed at the time an action is filed and is unaffected by subsequent events in the litigation. *Mas v. Perry*, 489 F.2d 1396 (5th Cir. 1974). The burden of proving citizenship rests on the party invoking diversity jurisdiction and must be shown by a preponderance of the evidence. *Id.*; *Scoggins v. Pollock*, 727 F.2d 1025, 1026 (11th Cir. 1984).

---

[2]Defendants concede that the amount in controversy exceeds $75,000 and that they are citizens of the State of Florida. Accordingly, the only issue before the Court is whether Plaintiff was a citizen of a State other than Florida at the time he commenced suit.

To be a citizen of a state within the meaning of 28 U.S.C. § 1332, a natural person must be both a citizen of the United States[3] and a domiciliary of a State. *Jones v. Law Firm of Hill & Ponton*, 141 F. Supp. 2d 1349, 1355 (M.D. Fla. 2001) (citations omitted).

> A person is not necessarily a citizen of, or domiciled in, the state in which he resides at any given moment. State citizenship, or "domicile" for purposes of diversity jurisdiction is determined by two factors: residence and intent to remain.
>
> In determining domicile, a court should consider both positive evidence and presumptions. One such presumption is that the state in which a person resides at any given time is also that person's domicile. But because changes in residence are so common in this country, courts also refer to another presumption: once an individual has established a domicile, he remains a citizen there until he satisfies the mental and physical requirements of domicile in a new state. However, these presumptions are merely aids for the court. The objective facts bearing on an individual's "entire course of conduct" determine domicile for diversity jurisdiction purposes. No single factor is conclusive; instead, the Court looks to the "totality of evidence."

*Id*. (citations omitted).

Factors frequently taken into account when assessing the domicile of a party include: the party's current residence; payment of taxes; voter registration and voting practices; driver's license and automobile registration; situs of personal and real property; location of brokerage and bank accounts; and membership in clubs, churches, fraternal organizations and other associations. 13E CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3612 (3d ed. current through 2010).

District courts have broad discretion in determining the manner in which citizenship is considered. *Id*. They may rely on, *inter alia*, the pleadings, affidavits of the parties, available depositions, and other evidentiary materials, or they may set an evidentiary hearing to receive additional testimony. *Id*.

---

[3]The parties agree that Plaintiff is a citizen of the United States.

**III. Discussion**

Plaintiff was born in Somerset, Kentucky on October 23, 1950. (Doc. 20 at 5). He continued to live in Kentucky until 1959 and, at least according to Plaintiff, "always wanted to return to the area where he spent his early childhood." (Doc. 20 at 5). However, from 1972 until 2001, he lived and worked in Central Florida, serving as a Deputy Sheriff in the Orange County Sheriff's Department. (Doc. 20 at 4). From 2001 to 2006, he operated his own business in Orlando, Florida. (Doc. 20 at 5). In June 2006, Plaintiff sold his business and, along with his wife, apparently moved to Monticello, Kentucky.

When Plaintiff commenced suit (i.e., on April 14, 2010), he:

- owned a 1,578 square-foot single family residence in Orlando, Florida, which he purchased in 1983 and for which he declared and took a homestead exemption in 2009, 2008, 2007 and 2006[4] (Doc. 11-3)

- owned an 864 square-foot single family residence in Monticello, Kentucky, which he purchased in September of 2006 (Doc. 20-5)

- possessed a Kentucky driver's license, which he first obtained on March 26, 2008 (Doc. 20-6)[5]

- was registered to vote in the State of Kentucky, having first registered on March 26, 2008 (Doc. 20-8);[6] and

---

[4] As of July 18, 2010, Plaintiff still owned and had declared a homestead exemption for his residence located at 3221 W. Saint Brides Cir., Orlando, Florida 32812. *See* ORANGE COUNTY PROPERTY APPRAISER, Property Searches, OCPA Record Inquiry System, http://www.ocpafl.org/rec_srch.html#1 (last visited July 18, 2010).

[5] According to an unauthenticated document produced by Defendants, Plaintiff also had (and continues to have) a Florida driver's license. (Doc. 11-4). According to Plaintiff, however, he surrendered his Florida driver's license to the State of Kentucky when he obtained his Kentucky's driver's license. (Doc. 20 at 7).

[6] According to an unauthenticated document produced by Defendants, Plaintiff is also registered to vote in the State of Florida. (Doc. 11-6). According to that document, however, Plaintiff last voted in Florida on November 2, 2004. According to Plaintiff's records, which are also not authenticated, Plaintiff voted in a Wayne County, Kentucky election in 2008.

- owned three motor vehicles that were all registered in the State of Kentucky (Doc. 20-9).[7]

Based on the foregoing, the Court is unable, at this time, to determine whether Plaintiff has met his burden of establishing that he was a citizen of the State of Kentucky when he commenced suit. While much of the indicia points towards Kentucky, the Court is troubled by, *inter alia*, Plaintiff's Florida homestead exemption and the absence of any individual income tax returns in the record. Assuming, however, that Plaintiff's 2008 and 2009 individual federal and state[8] income tax returns (i.e., the returns filed in 2009 and 2010 for the 2008 and 2009 tax years, respectively), reflect Plaintiff's domicile as being in Kentucky, then the preponderance of the evidence would seem to support Plaintiff's Kentucky citizenship. Accordingly, it is

**ORDERED** that, by no later than **Monday, July 26, 2010**, Plaintiff shall file under seal his authenticated 2008 and 2009 individual federal and state income tax returns for in camera review.

It is **FURTHER ORDERED** that, by no later than **Monday, July 26, 2010**, Defendants may file any additional evidence that they may have which bears upon Plaintiff's citizenship.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on July 19, 2010.

Copies furnished to:

Counsel of Record
Unrepresented Party

**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

---

[7] In addition to the foregoing, Plaintiff also references various commercial transactions and enterprises involving himself or his wife that took place, or were operated, in Kentucky. (Doc. 20 at 5-8). The Court finds this evidence (as well as the affidavit of Plaintiff's wife at Doc. 20-13) to provide, at most, limited support for Plaintiff's status as a Kentucky citizen.

[8] Kentucky, unlike Florida, imposes a state income tax on all of its residents. *See, e.g.*, KENTUCKY DEPARTMENT OF REVENUE, Individual Income Tax, http://revenue.ky.gov/individual/incometax.htm (lasted visited on July 18, 2010).

-5-