# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**GREGORY TAYLOR, individually and on behalf of the GREGORY WAYNE TAYLOR INDIVIDUAL RETIREMENT ACCOUNT,**

                **Plaintiff,**

**-vs-**                                          Case No.  6:10-cv-559-Orl-31GJK

**AMERICAN HERITAGE CHURCH FINANCE, INC., MARK WARREN ASPLIN, AMY HORNE THOMPSON, and BRYANT FORREST THOMPSON,**

                **Defendants.**

## ORDER

This matter came before the Court without oral argument upon consideration of the Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1) (the "Motion") (Doc. 11) filed by Defendants Amy Horne Thompson and Bryant Forrest Thompson ("Defendants"),[1] the response in opposition thereto (the "Response") (Doc. 20) filed by Plaintiff Gregory Taylor ("Plaintiff"), and Plaintiff's response to the Court's July 19, 2010 Order (Doc. S-1).[2]

**I. Overview**

On April 14, 2010, Plaintiff brought suit to confirm an arbitration award pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. (Doc. 1). In his Amended Petition, Plaintiff predicates subject matter jurisdiction solely upon 28 U.S.C. § 1332 (i.e., diversity of citizenship).

---

[1] Defendants American Heritage Church Finance, Inc. and Mark Warren Asplin did not join in Amy and Bryant Thompson's Motion.

[2] On July 19, 2010, the Court ordered Plaintiff to file his 2009 and 2008 state and federal income tax returns under seal. (Doc. 21 at 5). On July 26, 2010, Plaintiff timely complied with that Order. (Doc. S-1).

In their Motion, Defendants contend that the Court lacks subject matter jurisdiction because Plaintiff and Defendants are all citizens of the State of Florida.[3] In his Response, Plaintiff contends that at all material times he was a citizen of the State of Kentucky and that there is complete diversity of citizenship between the parties.

The Court addresses Defendants' Motion, *infra*.

## II. Standard of Review

Unlike state courts, lower federal courts are courts of limited jurisdiction: they possess only that power authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). There is a presumption that a cause lies outside this limited jurisdiction, and the burden of proving otherwise rests on the party asserting jurisdiction. *Turner v. Bank of North Am.*, 4 U.S. (4 Dall.) 8, 11 (1799); *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-183 (1936); *see also Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001).

For diversity jurisdiction to exist, no defendant may be a citizen of the same state as any plaintiff. *See* U.S. CONST. art. III, § 2; 28 U.S.C. § 1332; *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806), *overruled on other grounds*, *Louisville, Cincinnati & Charleston R.R. Co. v. Letson*, 43 U.S. 497, 555 (1844). Citizenship is assessed at the time an action is filed and is unaffected by subsequent events in the litigation. *Mas v. Perry*, 489 F.2d 1396 (5th Cir. 1974). The burden of proving citizenship rests on the party invoking diversity jurisdiction and must be shown by a preponderance of the evidence. *Id.*; *Scoggins v. Pollock*, 727 F.2d 1025, 1026 (11th Cir. 1984).

---

[3] Defendants concede that the amount in controversy exceeds $75,000 and there is no dispute that Defendants are all citizens of the State of Florida. Accordingly, the only issue before the Court is whether Plaintiff was a citizen of a State other than Florida at the time he commenced suit.

To be a citizen of a state within the meaning of 28 U.S.C. § 1332, a natural person must be both a citizen of the United States[4] and a domiciliary of a State. *Jones v. Law Firm of Hill & Ponton*, 141 F. Supp. 2d 1349, 1355 (M.D. Fla. 2001) (citations omitted).

> A person is not necessarily a citizen of, or domiciled in, the state in which he resides at any given moment. State citizenship, or "domicile" for purposes of diversity jurisdiction is determined by two factors: residence and intent to remain.
>
> In determining domicile, a court should consider both positive evidence and presumptions. One such presumption is that the state in which a person resides at any given time is also that person's domicile. But because changes in residence are so common in this country, courts also refer to another presumption: once an individual has established a domicile, he remains a citizen there until he satisfies the mental and physical requirements of domicile in a new state. However, these presumptions are merely aids for the court. The objective facts bearing on an individual's "entire course of conduct" determine domicile for diversity jurisdiction purposes. No single factor is conclusive; instead, the Court looks to the "totality of evidence."

*Id*. (citations omitted).

Factors frequently taken into account when assessing the domicile of a party include: the party's current residence; payment of taxes; voter registration and voting practices; driver's license and automobile registration; situs of personal and real property; location of brokerage and bank accounts; and membership in clubs, churches, fraternal organizations and other associations. 13E CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3612 (3d ed. current through 2010).

District courts have broad discretion in determining the manner in which citizenship is considered. *Id*. They may, for example, rely on the pleadings, affidavits of the parties, available depositions, and other evidentiary materials, or they may set an evidentiary hearing to receive additional testimony. *Id*.

---

[4]The parties agree that Plaintiff is a citizen of the United States.

**III. Discussion**

Plaintiff was born in Somerset, Kentucky on October 23, 1950. (Doc. 20 at 5). He continued to live in Kentucky until 1959 and, at least according to Plaintiff, "always wanted to return to the area where he spent his early childhood." (Doc. 20 at 5). However, from 1972 until 2001, he lived and worked in Central Florida, serving as a Deputy Sheriff in the Orange County Sheriff's Department. (Doc. 20 at 4). From 2001 to 2006, Plaintiff operated his own fingerprinting business in Orlando, Florida. (Doc. 20 at 5). In June 2006, Plaintiff sold his business and, along with his wife, "moved to Monticello, Kentucky, where [he] opened [and later sold] a barbeque restaurant." (Doc. 20-12, ¶ 4).

When Plaintiff commenced suit, he, *inter alia*:

- owned a 1,578 square-foot single family residence in Orlando, Florida, which he purchased in 1983 and for which he declared and took a Florida homestead exemption in 2009, 2008, 2007 and 2006[5] (Doc. 11-3)

- used the address of his Orlando, Florida home as the "home address" provided to the Internal Revenue Service on his 2009 and 2008 personal federal income tax returns (Doc. S-1)[6]

- maintained, apparently along with his wife, two bank accounts with Orlando Federal Credit Union (Doc. S-1)

---

[5] As of July 26, 2010, Plaintiff still owned and had declared a homestead exemption for his residence located at 3221 W. Saint Brides Cir., Orlando, Florida 32812. *See* ORANGE COUNTY PROPERTY APPRAISER, Property Searches, OCPA Record Inquiry System, http://www.ocpafl.org/rec_srch.html#1 (last visited July 26, 2010).

[6] Plaintiff did not file any personal state income tax returns for 2009 or 2008 with the Kentucky Department of Revenue. According to Plaintiff's counsel, Plaintiff was not obligated to pay Kentucky income tax due to the nature and sources of his income. (S-1).

Case 6:10-cv-00559-GAP-GJK   Document 22   Filed 07/27/10   Page 5 of 6 PageID 404

- was registered to vote in the State of Florida, having first registered on August 21, 1996 (Doc. 11-6) (as noted, *infra*, Plaintiff was also registered to vote in Kentucky)[7]

- owned an 864 square-foot single family residence in Monticello, Kentucky, which he purchased in September of 2006 and swears to have lived in for ten months out of every year since 2006 (Docs. 20-5 and 20-12, ¶9)

- maintained a bank account with L&N Federal Credit Union (apparently a Kentucky-based credit union) (Doc. S-1)

- possessed a Kentucky driver's license, which he first obtained on March 26, 2008 (Doc. 20-6)[8]

- was registered to vote in the State of Kentucky, having first registered on March 26, 2008 (Doc. 20-8);[9] and

- owned three motor vehicles that were registered in the State of Kentucky (Doc. 20-9).[10]

Based on the foregoing, the Court concludes that Plaintiff has failed to meet his burden of establishing subject matter jurisdiction. Although much of the indicia points towards Kentucky, on balance, the preponderance of the evidence does not support a finding that Plaintiff is a

---

[7] As of July 26, 2010, Plaintiff was still registered to vote in Florida. *See* FLORIDA DIVISION OF ELECTIONS, Check Your Voter Status, http://registration.elections.myflorida.com/Default.aspx (last visited July 26, 2010). However, Plaintiff had not voted in Florida since November 2, 2004. (Doc. 11-6).

[8] According to an unauthenticated document produced by Defendants, Plaintiff also had (and continues to have) a Florida driver's license. (Doc. 11-4). According to Plaintiff, however, he surrendered his Florida driver's license to the State of Kentucky when he obtained his Kentucky's driver's license. (Doc. 20 at 7; Doc. 20-12, ¶ 11).

[9] According to Plaintiff's records, Plaintiff voted in a Wayne County, Kentucky election in 2008. (Doc. 20-8).

[10] In addition to the foregoing, Plaintiff also references various commercial transactions and enterprises involving himself or his wife that took place, or were operated, in Kentucky. (Doc. 20 at 5-8; and Doc. 20-12). The Court finds this evidence (as well as the affidavit of Plaintiff's wife at Doc. 20-13) to provide, at most, limited support for Plaintiff's status as a domiciliary of Kentucky.

domiciliary of Kentucky.  If Plaintiff intended to leave Florida after serving as a deputy sheriff for nearly thirty years and relocate to Kentucky, he would no longer claim a Florida homestead exemption; nor would he continue to represent to the Internal Revenue Service that his home address is in Florida.  Accordingly, it is

**ORDERED** and **ADJUDGED** that:

1.  Defendants' Motion to Dismiss (Doc. 11) is **GRANTED**;

2.  This case is hereby **DISMISSED** due to lack of subject matter jurisdiction, each party to bear their own costs and fees; and

3.  The Clerk of the Court is directed to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on July 27, 2010.

Copies furnished to:

Counsel of Record
Unrepresented Party

**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**